All right, good morning. Miss Ruby will hear from you first May it please the court council. My name is Vicki Ruby and I am appearing on behalf of the appellant officers The issue in this case is whether Andrew Layton had a constitutional right to be repositioned after being restrained Well, he continued to resist an unpredictable and recurring manner and whether that right was clearly established Because case law from this circuit as well as several other circuits has found using leg restraints in a prone position To combat an arrest ease recurrent and unpredictable resistance is not a constitutional violation The officers are entitled to qualified immunity While plaintiff has not contested Use of force prior to the application of the leg restraints That doesn't allow plaintiff to segment or divorce his earlier conduct from his continued resistance after the leg restraints were applied Here the unrefuted record as found by the district court Establishes that he kicked thrashed and according to at least one witness Through an officer around like a ragdoll in total six officers and two civilians worked together to apply the restraints gradually and in proportion to the degree of resistance exhibited Various control techniques from verbal commands to a leg was street leg sweep Pressure point techniques knee and fist strikes and the taser and drive stun were used. It took approximately 10 minutes to get mr Layton in two sets of handcuffs and in leg restraints After those restraints are applied. He continues to resist the district court notes on five excuse me on eight separate occasions that he Resisted fought struggled after he was placed in leg restraints The resistance was thrashing side to side elevating his chest off the ground kicking and spitting in the direction of the officers the officers used a spit mask and Determined in their discretion that it was safest for mr Layton to maintain him on his stomach as the area where this Incident is incurring is quite small The hi-v manager indicated the hi-v foyer only had enough width to pass a single shopping cart through The officers were concerned that mr Layton presented a threat to himself that he could strike his head on the adjacent brick wall or metal carts Paramedics were ultimately called to the scene. They performed a medical assessment and They attempted to position him on his side point. Is it undisputed that they perform the assessment? I Was struggling to understand the record on that because I thought there was some testimony that they did not perform an assessment or that they Told the police they could not perform an assessment and there's other evidence that they did I would direct your honors to the Gold Cross run report is run report 69, right? That suggests they did but and that asking whether it's undisputed it I would I submit that it is undisputed the run report indicates that his pulse was checked Respirations were checked. He was his I know about that. But what about the other evidence? You know what? I'm talking about. There was some testimony from one of the officers that The paramedics told him they could not do an assessment Whether a more thorough assessment could have been performed or not There is as the district court found evidence that some assessment was performed The officers had a right to rely on the assessment even if it wasn't a full assessment even if it wasn't the same type of assessment a physician would Conducted an ER they had a right to rely on those reasonably trained paramedics that had additional their testimony that the paramedics reported the results of an assessment to the police There is not testimony that they reported the results of the assessment, but both paramedic drew Reliance are you referring to the the officers at least some of them? There are six officers there observed the assessment observed that there was an assessment performed and here The when you said they had the right to rely on the assessment What exactly did they rely on? Well, the assessment is ongoing. He's continued to be monitored while he's being transported to the jail in the ambulance, for example Officer best asked the paramedic how he was doing and the paramedic reported that he had a pulse that he had respirations that he was Essentially, okay, the I would direct your honors attention to the paramedics testimony regarding the assessment they performed Which is not only in their run report, but is at their testimony both paramedic Drew's and paramedic Burt's testimony is in the court's record and in their Lengthy testimony regarding the assessment they performed they detailed the specific things they were assessing throughout their encounter with Mr. Layton which began at approximately 5 or 6 a.m. And Continued until they arrived at the jail at approximately 5 22 a.m It is you think this testimony about how they could not perform an assessment refers to what you're calling a full assessment or the kind of assessment that a physician would perform Is that what you're trying to tell us? It it is but what I'm also saying is the unrefuted record shows that an assessment Was performed that his respirations were assessed that they assessed his pulse that they assessed various measures based on their observations including noting that he was combative noting his demeanor looking at Temperature there's a whole three page document that details the assessment that was performed by the paramedics At the scene and in route to the jail and that it was reasonable for the officers to rely upon that assessment Well again, just so I'm clear if the assessment wasn't communicated to them What what do you mean when you say reasonable to rely on it? the Officers got paramedics to the scene. They knew that the paramedics were next him. They knew that they were observing him That discharges their obligation under the Eighth Amendment to get the trained medical professionals out there trained medical professionals In the hands of medical professionals and if something needed to be done presumably they would have done it Yeah, really? Is that the argument? All right and here those trained medical professionals attempted to put him into a Recovery position is the position that he fought being placed on his side. These are all Important key facts that were found by the district court and they informed the qualified immunity analysis That the only reason why he wasn't placed in the recovery position and especially in you know while being transported I think he was transported on his stomach is the reason why it's because He resisted that position and wanted to be placed on his stomach or that was the only place he wasn't resisting I'm I just want to be clear about the record here. I would direct your attention to the appendix pages 284 310 314 and all of those locations the paramedics Address their efforts to place him on his side and that he fought that resistance They then used a pillow to try to prop him up onto his side Ultimately, he was transported in a prone like position, but that was due to his resistance in this case The resistance is the key issue here because as this court is well aware under the Supreme Court guidance plaintiff Cannot defeat qualified immunity by citing to generally established principles rather they must cite to a Case that provides the officers with fair and clear warning that their conduct would violate. Mr. Layton's constitutional rights Here the squarely governing case law involves suspects that continue to resist Mr. Layton's recurring and Unpredictable resistance maintained a threat to himself I would direct this court's attention to the recent Ryan versus Armstrong decision in Which an inmate was shackled and the ankles a considerable amount of body weight Was placed on that inmates back and his hands and ankles were fettered together the court Looked at that use of force Which only ceased when he went into respiratory arrest and found that the officers use of force was reasonable The 11th Circuit reached a similar decision in the Busey versus Morrissey case and the 5th Circuit reached the same conclusion in Pratt v. Harris County Pratt v. Harris County dealt with an individual who had his hands and feet fettered together and Was exhibiting what the court characterizes on and off again resistance that resistance was still enough to support the constitutionality of maintaining that suspect in a prone position Rather than cite two cases and discuss cases that dealt with resistance the district court Improperly relied upon cases that defined clearly established law at a high level of generality In fact, they cited two cases that dealt with suspects that were not resisting arrest were calm Were unconscious those cases aren't inherently incapable of providing officers who are confronted with an individual Continues to resist arrest that they cannot maintain him in a prone position When they reasonably conclude that it is in his best interest and safety So he doesn't strike his head on an adjacent wall and later when he refuses to be positioned on his side is the only version of Events before that the paramedics arrived is the only version That of the officers No, there were some Hy-Vee Employees that were also there and I would cite your honors to the Hy-Vee employee testimony Peter Johnston Described mr. Layton as he was never still at any point Joan Devens said he was still moving around He was growling the noise wasn't quite as loud when the paramedics were there But the unrefuted record from both the Hy-Vee and officers is that he continues to resist In fact when the paramedics arrived, well, that's what I wanted to ask about Is it your view that the resistance was continual or was it was it intermittent was it intermittent? and if it was intermittent, does that does that make a difference here with respect to the actions and the positioning of the This person whether it's intermittent or continual. It does not change this courts analysis Intermittent resistance is still highly unpredictable and presents a serious threat to the officers I would direct this court's attention to all Hy-Vee witness testimony regarding the resistance he continued to exhibit even if there were brief Periods in which he was not vigorously fighting against his restraints. He immediately reared back up That's the conduct that the Fifth Circuit dealt with in Pratt the on again off again resistance Which still is a significant threat to officer safety and justifies maintaining the suspect in a prone position I'll reserve the balance of my time What about the concern that? What might appear to be resistance is an effort to breathe? This court has dealt with that issue Particularly in your honors decision in Carpenter Regage here at the officers Viewing the movements viewed them reasonably as resistance as did the Hy-Vee witnesses that were viewing that same conduct Even if mr. Layton's motives were innocent. It was reasonable for the officers to view his conduct as continued resistance Thank you, your honor, all right, you may reserve the balance for rebuttal Yes, sir morning Thank You your honors may it please the court appellee My name is Bryce Miller and I represent a Pele Sherry Hanson the trustee for the next of kin her son Andrew will Andrew Layton may Miss Hanson respectfully requests this interlocutory appeal D dismissed for a lack of jurisdiction the arguments that you've heard today are not from That you've heard from appellants are not the version of the facts as the district court found genuine issues material fact in favor of The appellee instead. They're their own version of the facts if we look at page 20 Of the district courts addendum the district court says in this case The record demonstrates that once Layton was restrained by handcuffs and the hobble He only sporadically resisted the restraints yet. He was forced to remain on his stomach Well, I think she argued the point based on sporadic resistance. She said this morning I just heard her say even sporadic resistance She cited the Pratt case and so forth and said even if it's intermittent or sporadic It can still be a threat to the officers and justify what they did So I'm not I don't see the jurisdictional problem if they're taking sure and and up until this point in time I think it was a little bit less explicit. So I will And then the district court goes on to say though a Jury could reasonably find that laying could safely be moved off his stomach while awaiting the ambulance So the district court reviewing the evidence looking at the evidence said that there is evidence to find that this sporadic resistance as as it is described doesn't create a threat to the officers or to himself instead that there was an opportunity to Move him off of his stomach and he's being held down and let's I Move on from the jurisdictional argument It seems to me that the argument that this Doesn't violate clearly established law presents a pure legal issue So even if you would be right on the reasonableness and whether they're trying to relitigate the facts I don't understand why we at least wouldn't have jurisdiction over the second part of the inquiry Absolutely. And so if we do accept the facts as the district found them We then that we would move on to that qualified immunity analysis. I would completely agree with that It's just when they present this evidence that he was continuing to resist. Let's actually talk about what this resistance was Well, it's a little unclear even what you say what the district court found I presume there were no findings here because there's a summary judgment motion, but there's a long recitation at pages 1 to 10 Do you think those are facts on which the district court relied or do you look only to the Discussion of the legal issues later for the facts that you think we should I think the Sorry, I think that the answer to the question is that those are certainly facts that the district court found in the record But when we're reviewing the but then if you go on to page 20 then when the district courts finding issues of material fact for one the and then the district court ends this paragraph by saying the court finds there's a genuine issue material fact as to whether the officers use excessive force by keeping him in a prone position for An extended period of time after he was placed in restraints and what the a circle that's a legal conclusion that comes after the observation that he could be moved to his side the officers knew that it was Reasonable to keep him in a or that they should move him into a recovery position and in Thompson v Murray from this court The what this court looks at is whether or not the summary judgment record blatantly Contradicts the version of the facts the district court likely assumed to determine there are genuine issues of material fact So it's not you know Did the district court make sure they cited every fact and what I think the district court maybe is being referenced here is some of The reasonable inferences that the district court was making might not have been fully drawn out Mr. Layton is on his stomach after being subdued by six officers he's handcuffed and as Officer best the first one Who is on the scene reported at? 454 a.m. We have him hogtied. We're going to get the energy out of him first, then we're taking him to jail this is quote and At that point in time. He's got he's hogtied shortly thereafter He's wearing a spit hood and for at least 11 minutes because that's when the ambulance arrives Somewhere between 11 and 18 minutes. That's not like the time the ambulance is there. He's kept prone on the floor hogtied Spit-hooded and they're characterizing this as the kind of resistance that requires the further application of force And I think what the district court's finding is when you have someone in this vulnerable position hogtied spit-hooded on the floor and You have officers holding him down so he can't move at all That at that point in time he's restrained that there's no There's no further need to control him that he is controlled when he's in that position council. Let me ask you Opposing counsel the appellants brief brought up a case called Mayard versus Hopwood Cited it twice in the brief and it's a case where? The plaintiff ended up selling a liquor to an undercover police officer the undercar or the Plaintiff ended up being real belligerent eventually it ended up in a hobble tie situation the officer then placed The the eventual plaintiff into the backseat of the police car face down when they got to the police station The plaintiff was foaming at the mouth and grinding her teeth It had some sort of seizure that case to me We said not a lot of analysis But judge McGill in that opinion said you know what that was reasonable under the circumstances now I may disagree with that But that is pretty darn close I mean it is really really close and you had resistance you had pushing and etc, etc And you really with the hobble tie this particular plaintiff couldn't do much Why doesn't this case just fall away on clearly established because of Mayard and that is distinguished on this? Principle when he's when Mayard put in the back of the squad car There's not this continual pressure if you look at the expert report that we have from Dr. Bodden Part of the issue with being placed in the hobble restraint is then the downward pressure or the restraint holding you down Which is sorry which is present when you have these officers now in their testimony they kind of say Oh, we're just kind of holding him to the ground, but if you look at their police reports They talk about putting pressure to hold him on the ground And so I think that's the distinguishing force is the fact that they're actually putting pressure Then when he's put with their hands with their hands and that when he's on the gurney, they're continuing to pressure By strapping him down. It's a different kind of pressure But he's there's no ability move when he's hobbled in the back of us Sorry, I'm the back of the squad car There's an ability to use some movement to attempt to free the diaphragm to rise you might be right about that But then it says in that opinion It says a hop and noted this a hobble restraint is a nylon rope placed around the legs that tightens When the detainee struggles, which I assume means if you're if you're facedown that it's gonna pull it's gonna pull pull you more Onto your stomach put more pressure on you Sure, and that and in this case though, the pressure is being further Amplified by that pressure being applied on there's that enough Is that mere fact that you're placing the hands on the back of the plaintiff here? You know, is that enough that to say that it's clearly established that you can't do that in light of Baird That's pretty close. I mean, that's a fine distinction. You're making the there's a distinction though. I think to also be made between That's kind of in mayor they're Putting the hobble on and then they're not actually applying further force holding him into the position, right? it's a position that they're putting him in, you know, this back of the squad car and But here there's a difference and if you look at the court in McHugh the First Circuit They find a robust consensus that deals with the specific issue of Actually putting the pressure. I don't mean to belabor this but the question is is under that second prong of qualified immunity The question is is what a reasonable officer, you know Know what the law is and it's a pretty fine distinction for the officer to know you can hobble tie in this circuit You can't place somebody facedown when there's some resistance But you can't put pressure on them That's a very I mean I you might be right as a matter of medical science but that's a pretty fine distinction for an officer to know and I think one of the things that we should look at is when we're actually looking at the This course decisions using the hobble Pratt Gunther the case that you cited we dealt with them in our brief as well is all of those cases the application of the hobble and the arrestee losing consciousness They collapse they collapse in time So they said and so they're hobbled they're restrained put in that position and now they're moved into a safer position The recovery position are off their back and it just and they say well, they weren't moved until they lost consciousness. Well those It happens in those cases that that Collapsed here. We have at least 11 minutes of holding with the pressure on the back We have 11 minutes of officers putting downward pressure on him to keep him from moving then we have him being moved to the stretcher Which they were able to do in the ambulance came so this idea that there was no ability to move him or change him I think is a reasonable jury could look and say well, they were able to move him on the ambulance came I think a reasonable jury could say There were six of them and then they went down to two of them and four of them are milling about I thought there was evidence that The officers of the paramedics tried to adjust his position and he resisted even that When they were when they were putting him on the stretcher when they were attempting to position him on the stretcher the ambulance, too the the records a little bit unclear exactly how that happened but that he was placed face down and that he was still and the resistance that we're referring to is tensing against restraints and There is no evidence that they attempted to lay him on his back or place him in that way Oh, but there's evidence about a pill using a pillow to turn his head to turn his head but that doesn't change the There is no evidence that they attempted to not put him with the chest down the actual pressure Hey, Jake, the district court says that Paramedics tried to position Layton on his side, but Layton kept rolling to the prone position And And As the court continues to describe the events he a couple of additional times after that refers to the Mr. Layton continuing to move his body continuing to struggle on the cot sure The that was one of that was the version from Baker And that was the version from the run report I think that there's an inference to be made from the evidence that they were able to position him They had if you look at the actual stretcher itself, which we have a picture of an exemplar to hold him flat On that on his side. It would be a weird thing to hold flat on his side While strapping his arms onto the stretcher, which they were restraining leads me to my follow-up and I'm not Sure, I understood your answer to judge Colleton's question earlier about this recitation In the in the opinion of the district court under section 1 that's entitled factual background and it runs from page 2 to page 11 and it's several pages of a chronology of events and I just read two or three parts of that is that And I didn't understand your answer. Is this what we're to go to to find the facts in this case as viewed in the light most favorable to the plaintiff and as as as Therefore found by the district court. Are these the pages we're to look at? and my answer would be No, and here's why these are the facts that the district court found But then the district court goes on to pages 20 27 28 and highlight what those genuine issues of material fact are And so when the district court says what the genuine issues of material fact are the a circuit precedent is and You look to see whether or not those genuine issues of material fact are clearly contradicted by the record So what I would also say is that our brief would show you what's also in the record as well what that is we have several pages of a Chronology of events set forth by the district court, and he doesn't say In fact, he doesn't even say this witness says this but this witness says this he just he lists this this data these facts Chronological order as I understand the court is supposed to do the district court is supposed to to make these findings of fact so that We can then rule on the legal question and might not make factual Determinations so isn't that part of the opinion really the part that we should be looking at instead of a portion of the opinion of the opinion that talks about Disputes of fact I'm for the district court to say there are disputes of fact that doesn't really help us much does it I Would agree that it would be more helpful if there's a point-by-point recitation of this fact is disputed by this fact this fact is Where he lined them up, but when the court does find a genuine issue material fact does find these factual disputes So what do we do when we read that What you're supposed to do when you read that as you then go to page 20 you see that the court has found a Genuine issue of material fact on what on whether he could be safely moved Or on whether they used excessive for whether they use excessive force and it's a legal issue Well, no, but he also says that he was quiet and not resisting restraints where on page 20 Where both witness testimony in the squad car videos demonstrate? At times at times Leighton was quiet and not resisting restraints, that's not inconsistent with What he says in the previous sentence about sporadic resistance at other times he would have outbursts and resist his restraints So the question Sorry, and then the next line was viewing the facts in the light most favorable to plaintiff and recognize that defendant officers do not dispute He's he's restrained. He could be safely moved off his stomach while awaiting the ambulance Well, but isn't the legal question whether it would be obvious to a reasonable officer that he needed to move him Right of his stomach. That's different from whether a jury could find he could have been safely moved and Here the officers Will know from the cases cited in McHugh that you need to stop applying once he's been subdued and controlled and what we would argue Is that what the district courts finding is a jury could say when you're hogtied and you have a spit hood on you've been subdued And controlled and now it is the time to stop applying the force on him Well, the judge didn't even refer to the force on his back on page 20. The judge just said They used excessive force by or there was an issue of fact as to whether they used excessive force by keeping him in a prone Position and how they were keeping him in the prone position was by the downward pressure on his back Where does he say that they were applying downward pressure on his back That's undisputed If you go to addendum seven Okay The officers believe that given Layton's continue resistance It was best to keep him on his stomach and Baker uses hands to press Layton's shoulders to the ground So it was on the pressure the hands were on the shoulders not on the back I Thought the way you were gesturing you're suggesting they were pressing in the small of his back right where his lungs are But really it was on the shoulders shoulder blades. I believe was all the testimony and then there's also testimony in the record from Hittle officer Hittle was saying he was holding him on his back Which we cite to in our brief. I don't know that he also highlights that in his findings of facts but again, the question is under the a circum precedent is whether or not The summary judgment record blatantly contradicts the version of facts the district court likely assumed to determine there are genuine issues of material fact All right, I'm out of time I sorry yes, thank you for your argument Is Ruby would you care to make rebuttal? All right. We'll hear from you a Microphone Thank you, Your Honor a few points of clarification The facts are set forth by Judge Davis in pages 1 through 9. They're based on an undisputed record He cites that record and the alleged fact disputes that counsel pointed to are simply legal conclusions It's also undisputed that the only time any pressure was used was a hand on the shoulder when? Layton was actively resisting Well Groby held his thighs to the ground If we're talking about the back pressure counsel was making assertions as the back. Yes, sir. Huddle. Huddle also exerted pressure. What's Officer Hiddle's Hiddle excuse Moni is actually addressed in the court's factual findings in pages 1 through 9. I believe that's discussed at page I Believe it But the court does in fact quote Excuse me page 7 that Hiddle wrote that he while waiting gold cross Layton displayed fluctuating moods Discipline raging behavior tensing his other testimony of Hiddle. That's not quoted here where he I would cite admitted pressuring the back I Don't think that that's in the record But I would ask your honors to look at both the his report which has been submitted as well as his deposition testimony In any event, it's undisputed that the only time resistant the only time force was used was in response to resistance Well, so the answer my question the answer answer to my question a few minutes ago You would say that the facts That we can look to in this case are stated in pages 1 through 9, yes, I would And under those facts the officers are entitled to qualified immunity based on mr. Layton's continued resistance which Created a threat both to him's created a threat to himself I'd cite to There was a lot of discussion about whether the officers could have should have attempted something else this courts addressed that issue directly in Schultz versus Long and said the key inquiry isn't whether there's a less intrusive alternative But whether the officers actions fell within a range of reasonableness here under the mayor decision as well as the Ryan decision which dealt with the use of a considerable amount of body weight in addition to the Ankle shackles and wrist restraints that it was not clearly established that the officers Maintaining mr. Layton in a prone position Violated his constitutional rights for that reason we would ask that the district courts decision be reversed and that this court grant the officers qualified immunity Thank you All right. Thank you both for your arguments. The case is submitted and the court will file an opinion in due course You may be excused and madam clerk, please call the next case for argument Next case scheduled for argument Is restaurant recycling LLC versus employer mutual casualty company, etc You